# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable D. C. Greer
State Highway Engineer
Austin, Texas

Dear Sir:

Opinion No. O-3621
Re: The availability of the fees collected by the Highway Department and appropriated by H. B. 205 of the 47th Legislature for the payment of salaries and other expenses necessary to a proper administration of the Certificate of Title Act.

Your letter of May 28, 1941, describes fully the question which you have posed for our decision. We are therefore taking the liberty of quoting it in full as follows:

"Reference is made to the attached copy of House Bill No. 205 which was passed unanimously by both Houses of the 47th Legislature and signed by the Governor on May 2, 1941.

"You will note that the Act transfers from the Department of Public Safety to the State Highway Department the administration of the Certificate of Title Act as passed by the 46th Legislature and as amended by House Bill No. 205. Section 6 of House Bill No. 205 appropriates to the State Highway Department certain fees collected for the issuance of "Titles for its use in paying salaries and all other expenses necessary to its proper administration of the Act. This is the only money made available to the Highway Department for the payment of such expenses.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable D. C. Greer, Page 2

"On the effective date of the Act, or within one or two days thereafter, and before taking any action thereunder, Section 6 of the Act was presented to the Comptroller's office for determination of the authority of this Department to proceed to incur obligations thereunder, and we were advised that the appropriation contained in Section 6 would be immediately effective and that the Department was thereby authorized to create obligations thereunder. However, we were further advised that we would be limited in our expenditures to amounts not exceeding the total of the fees collected for the issuance of titles from and after the effective date of the Act. We have been governed by that advice.

"On May 27, 1941, payroll and voucher covering salaries of the employees of the Certificate of Title Division was presented to the Comptroller for the usual handling but it was returned to us with the advice that the appropriation against which it was drawn does not become available until September 1, 1941. This ruling by the Comptroller places this Department in an embarrassing position, and at the same time, will work a definite hardship upon a number of the employees of the State who were put to work or continued in the service of the State in good faith, believing, as do we, that the Legislature had made adequate provision for their payment.

"Your early consideration of and opinion on the availability of the fees collected by the Highway Department and appropriated by the Legislature for the payment of such salaries and other expenses necessary to a proper administration of the Certificate of Title Division for immediate expenditure will be greatly appreciated."

Section 6 of House Bill 205 of the 47th Legislature amends Section 57 of House Bill 407 of the 46th Legislature to read as follows:

"'Section 57. Each applicant for a certificate of title or reissuance thereof shall pay to the designated agent the sum of Fifty ($0.50) Cents,

of which Twenty-Five ($0.25) Cents shall be retained by the designated agent from which he shall be entitled to sufficient money to pay expenses necessary to efficiently perform the duties set forth herein, and the remaining Twenty-Five ($0.25) Cents shall be forwarded to the Department for deposit to The State Highway Fund, together with the application for certificate of title within twenty-four (24) hours after same has been received by said designated agent, from which fees the Department shall be entitled to and shall use sufficient money to pay all expenses necessary to efficiently administer and perform the duties set forth herein, and there is hereby appropriated to the Department all of such fees for salaries, traveling expense, stationery, postage, contingent expense and all other expenses necessary to administer this Act through the biennium ending August 31, 1943.'"

We must determine if this appropriation contravenes Section 6 of Article VIII of the Constitution of Texas which reads as follows:

"No money shall be drawn from the treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years* * *"

In Pickle vs. Finley, 91 Tex. 484, 485, it was declared by the Supreme Court of Texas:

"It is clear, that an appropriation need not be made in the general appropriation bill. It is also true, that no specific words are necessary in order to make an appropriation; and it may be conceded, as contended, that an appropriation may be made by implication when the language employed leads to the belief that such was the intent of the Legislature."

We regard the appropriation in House Bill 205 as sufficiently specific and turn to the more serious questions of whether it was made for a longer term than two years, and whether it may be upheld for a period of two years, although inoperative thereafter. See National Biscuit Co. v. State, 135 S. W. (2d) 687, 693 (Supreme Court).

Honorable D. C. Greer, Page 4

House Bill 205 by its provisions was made effective immediately upon its passage. It was signed by the Governor on May 2, 1941. Thereafter, by Senate concurrent resolution No. 70, concurred in by the House of Representatives, the intent of the Legislature in respect to the appropriation under House Bill 205 was declared as follows:

"NOW, THEREFORE, BE IT RESOLVED by the Senate of the State of Texas, the House of Representatives concurring, that it was the intent and purpose of the Legislature by the passage of said bill that all revenues accruing to the State Highway Fund under the terms of House Bill No. 205 be immediately available to the State Highway Department for its use in the payment of salaries and all other expenses necessary to the proper administration of the Act, and the Comptroller of Public Accounts of the State of Texas is hereby requested to issue warrants against said funds upon the presentation of proper vouchers by the Texas Highway Department covering salaries and all other expenses from and after the effective date of House Bill No. 205."

We conclude, therefore, that House Bill 205 appropriated to the State Highway Fund the revenues accruing thereto under House Bill 205 immediately upon the effective date of the Act.

The language of Section 6 of House Bill 205 "and there is hereby appropriated to the department all of such fees for salaries, traveling expense, stationery, postage, contingent expense and all other expenses necessary to administer this Act through the biennium ending August 31, 1943" supports the conclusion that the appropriation would run, if valid, through the full biennium period of from September 1, 1941 to August 31, 1943, which, when added to the period of time from the effective date of the Act, would exceed the term of two years. This would violate Section 6 of Article VIII of the Constitution.

Upon reading House Bill 205 from its four corners, we attribute to the Legislature the intent to appropriate for a two year period from the effective date of the Act. If, however, the appropriation be considered as one

Honorable D. C. Greer, Page 5

for longer than two years, it is our opinion that it would nonetheless be valid for a two year term, although invalid thereafter.

These conclusions comport with the doctrines announced by the Supreme Court in the cases of Pickle vs. Finley, supra, and Dallas County vs. McCombs, 140 S. W. (2d) 1109.

We quote from the Pickle case again as follows:

"* * *

"It is a well settled rule in the construction of statutes, that if an act of the Legislature be capable of two constructions, one of which conflicts with the Constitution and the other which does not, the latter must prevail. It is the duty of the courts 'so to construe every act of the Legislature as to make it consistent if possible with the provisions of the Constitution'. Dow v. Norris, 4 N. H., 16; Newland v. Marsh, 19 Ill., 376.

"The members of the Legislature are sworn to support the Constitution and the courts will not presume that they have intended to violate it when the language of the law will reasonably admit of another construction. Section 6 of article 8 of the Constitution (previously quoted) not only requires an appropriation before any money can be paid out of the treasury, but also limits every appropriation to a term of two years. * * * If they had made an appropriation in unmistakable terms which was to continue for all time, it might be held valid for two years, and inoperative thereafter. * * *"

In the McCombs' case, the Supreme Court speaking through Mr. Justice Critz, declared:

"* * *

"Plaintiff in error contends that even if this appropriation running for five years is in violation of the two years' provision of Section 6 of Article VIII of our Constitution as applied to the five year period taken as a whole, still

Honorable D. C. Greer, Page 6

it is not in violation of such constitutional pro-
vision as applied to the first two years of the
five year period. It seems to be the law that
where the Legislature has made 'an appropriation in
unmistakable terms', which continues for a longer
period than two years, such appropriation may be
upheld for the first two years, and would be in-
operative thereafter. Pickle v. Finley, 91 Tex.
484, 44 S. W. 480, 482. It will be noted that
the rule of law announced in Pickle v. Finley,
supra, contemplates that that appropriation shall
be made 'in unmistakable terms'. We interpret
this to mean that if an appropriation is made for
more than two years, it can be enforced for the
first two years if it appears that the Legisla-
ture undoubtedly intended such appropriation to
operate for two years, regardless of whether or
not it could do so thereafter. We think that this
rule cannot aid this appropriation, because when
all of the provisions of this Act are considered
together, we cannot say that the Legislature would
undoubtedly have passed it to operate for two years
only, instead of five years as provided by the Act.

'* * *"

House Bill 205 transferred the administration of
the Certificate of Title Act from the Department of Public
Safety to the State Highway Department. Necessarily this
required immediate administration and enforcement of the
Certificate of Title Act by the State Highway Department.
The Legislature recognized that the State Highway Depart-
ment would be compelled to incur obligations at once.
This was the reason for the immediate appropriation of the
fees. If the appropriation is ineffective, the enforcement
of the Certificate of Title Act would be paralyzed as a re-
sult of the action of the 47th Legislature in transferring
the administration from the Department of Public Safety to
the State Highway Department.

The purpose of the Certificate of Title Act is
expressed as follows in House Bill 205:

"'Section 1. This Act shall be referred to,
cited and known as the "Certificate of Title Act",

Honorable D. C. Greer, Page 7

and in the enactment hereof it is hereby declared to be the legislative intent and public policy of this state to lessen and prevent the theft of motor vehicles and the importation into this state of and traffic in stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end. The following terms as herein defined shall control in the enforcement and construction of this Act.'"

Section 12 of House Bill 205 recites:

"SEC. 12. The fact that motor vehicles with liens thereon are being purchased by innocent purchasers due to the present manner and method of issuing certificates of title; the fact that registration of motor vehicles is now under the jurisdiction and control of the Highway Department of the State of Texas and the issuing of certificates of title to motor vehicles is under the jurisdiction and control of the Department of Public Safety of the State of Texas, leaving the Highway Department without means of retaining a complete file on the ownership of motor vehicles, registered in this State throughout the year; * * *"

Clearly there is "an appropriation in unmistakable terms" in House Bill 205. And, paraphrasing the language of Mr. Justice Critz in the McCombs case, when all of the provisions and purposes of House Bill 205 are considered together, we cannot but say that the Legislature intended to make the appropriation operative for two years, regardless of whether or not it could do so thereafter, wherefore the State Highway Department would be enabled to assume the administration of the Certificate of Title Act immediately upon the effective date of House Bill 205.

It is therefore the considered opinion of this department that the fees collected by the State Highway Department and appropriated by the Legislature for the payment

of salaries and other expenses necessarily incident to a proper administration of the Certificate of Title Act, became available to the State Highway Department immediately upon the effective date of House Bill 205. It is our further opinion that such appropriation is operative only for a term of two years thereafter.

APPROVED JUN 4, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
Zollie C. Steakley
Assistant

ZCS:mp


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN